# United States Court of Appeals for the Federal Circuit

---

**JEREMY H. CONKLIN,**
*Petitioner*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent*

**DEPARTMENT OF VETERANS AFFAIRS,**
*Intervenor*

---

2025-1613

---

Petition for review of the Merit Systems Protection Board in No. SF-3330-23-0499-I-1.

---

Decided: January 22, 2026

---

JEREMY H. CONKLIN, Seattle, WA, pro se.

CONSTANCE E. TRAVANTY, Office of the General Counsel, United States Merit Systems Protection Board, Washington, DC, for respondent. Also represented by KATHERINE MICHELLE SMITH.

ALEXANDER BREWER, Commercial Litigation Branch, Civil Division, United States Department of Justice,

Washington, DC, for intervenor.   Also represented by
ALBERT S. IAROSSI, PATRICIA M. MCCARTHY, BRETT
SHUMATE.

––––––––––––––––

Before LOURIE, TARANTO, and CHEN, *Circuit Judges*.

PER CURIAM.

Dr. Jeremy Conklin, a physician and preference-eligible veteran, applied to be the Chief of Staff of a Veterans Health Administration (VHA) regional system, but was not selected.  After unsuccessfully seeking relief from the Department of Labor, Dr. Conklin appealed his non-selection to the Merit Systems Protection Board under the Veterans Employment Opportunities Act of 1998 (VEOA), 5 U.S.C. § 3330a(a), (d).  He alleged that the Department of Veterans Affairs (agency), of which VHA is a part, violated his veterans' preference rights in evaluating his application for the Chief of Staff position—which was open only to physicians.  The Board, relying on our decision in *Scarnati v. Department of Veterans Affairs*, 344 F.3d 1246 (Fed. Cir. 2003), dismissed Dr. Conklin's appeal for lack of jurisdiction because, under 38 U.S.C. §§ 7401 and 7403, VHA appointments of physicians are not subject to the requirements of the VEOA.  *Conklin v. Department of Veterans Affairs*, No. SF-3330-23-0499-I-1, 2025 WL 326321, at *1–2 (M.S.P.B. Jan. 28, 2025) (*Final Decision*); Board Supplemental Appendix (S. Appx.) 1–3.  We affirm.

I

A

Dr. Conklin served intermittently in the United States Army and Air Force in the 1990s and 2000s for a total of about four years, ending in 2009.  Following his service, the agency awarded him veterans' benefits, effective in 2017, for a 60-percent disability based on a service-connected condition or conditions.  *See* S. Appx. 58–61.

In November 2022, Dr. Conklin applied to fill an advertised opening for a "Physician – Chief of Staff" job at VHA's Puget Sound Health Care System, an excepted-service position announced by the agency the previous month. The position encompassed "direct patient care responsibilities" and therefore required a license to practice medicine. S. Appx. 66–68. Dr. Conklin was not interviewed, and in May 2023 VHA told him that he had not been selected. S. Appx. 84–87.

On June 12, 2023, after asking VHA whether in the hiring process it had given him a preference based on his veteran status and receiving a noncommittal response, S. Appx. 84–87, Dr. Conklin filed a complaint with the Department of Labor alleging that the agency had violated various veterans' preference regulations, *see* S. Appx. 88–89. The Department of Labor investigated the allegations and, the next month, notified Dr. Conklin that it had determined that his rights were not violated because "[p]hysicians are exempt from veterans' preference under [38 U.S.C. § ]7401," a statute governing VHA appointments. S. Appx. 90. Accordingly, it closed his case, notifying him of his right to appeal to the Board. *Id.*

B

Dr. Conklin (who is also a licensed attorney) appealed to the Board on July 20, 2023, proceeding pro se and alleging that "[v]eteran's [p]reference [was] not used" in evaluating his Chief of Staff application. S. Appx. 102; *see* S. Appx. 104. The administrative judge (AJ) assigned to the case understood Dr. Conklin to be invoking the Board's VEOA jurisdiction and ordered briefing on whether the Board had such jurisdiction over his appeal. S. Appx. 91–92. To establish VEOA jurisdiction, Dr. Conklin had to plead either that the agency denied him the opportunity to compete, *see* 5 U.S.C. § 3330a(a)(1)(B), or that it "violated [his] rights under any statute or regulation relating to veterans' preference," *see id.* § 3330a(a)(1)(A). *Id.* § 3330a(d).

For the latter ground of jurisdiction, which is at issue here, Dr. Conklin was required to (1) demonstrate his exhaustion of his Department of Labor remedy and (2) nonfrivolously allege (i) his preference eligibility under the VEOA, (ii) his possession of statutory or regulatory veterans' preference rights purportedly violated by the agency, and (iii) his right to appeal such a violation to the Board. *See* S. Appx. 92–93; 5 U.S.C. § 3330a(d), (a)(1)(A).

In response to the AJ's order, Dr. Conklin identified the VEOA (and no other source) as providing the Board jurisdiction over his appeal. *See* S. Appx. 48. In particular, he alleged that the agency had violated his hiring-preference rights by noncompliance with 5 C.F.R. Part 302, which requires that veterans be preferred in various ways in appointments for certain excepted-service positions. *See* S. Appx. 48–50. The agency moved to dismiss the Board appeal, arguing that "physician positions in the VHA are exempt from the enforcement mechanism in VEOA." *Conklin v. Department of Veterans Affairs*, No. SF-3330-23-0499-I-1, 2023 WL 9777240, at 2 (M.S.P.B. Nov. 14, 2023) (*Initial Decision*); S. Appx. 11.[1] Dr. Conklin countered that 38 U.S.C. § 7403 "mandates that the Secretary of [Veterans Affairs] . . . use the veteran preference principles set forth in Title 5, Chapter 33, subchapter I, when hiring veterans for physician jobs." S. Appx. 35.

The AJ dismissed Dr. Conklin's appeal for lack of Board jurisdiction on November 14, 2023. *Initial Decision*, at 1. Regarding the hiring-preference jurisdictional basis of § 3330a(d), (a)(1)(A), the AJ determined, and it is undisputed here, that Dr. Conklin had satisfactorily demonstrated his preference eligibility and exhaustion of his Department of Labor remedy. *Id.* at 7. The AJ ruled, however, based on our decision in *Scarnati v. Department of*

---

[1] For the *Initial Decision*, we use the native page numbers on the decision found at S. Appx. 10–25.

*Veterans Affairs*, 344 F.3d 1246, 1247–48 (Fed. Cir. 2003), that appointments to physician positions in VHA are "not covered by the veterans' preference redress mechanism provided by VEOA," so Dr. Conklin had not alleged a violation within the Board's jurisdiction. *Initial Decision*, at 7.

Dr. Conklin petitioned for full Board review. The Board, reiterating the holding of *Scarnati* that "Congress has specifically exempted [VHA's appointments of physicians] from the VEOA process," affirmed the initial decision on January 28, 2025. *Final Decision*, at *1–2 (citing 344 F.3d at 1248).

Dr. Conklin timely sought review in this court, naming the agency as respondent. The agency moved to intervene and to have the case recaptioned to designate the Board as respondent, and we granted the motion. ECF Nos. 16, 18. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

II

We must "hold unlawful and set aside" any finding or conclusion of the Board's that is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). Whether the Board has jurisdiction over an appeal is a question of law that we decide without deference. *Johnston v. Merit Systems Protection Board*, 518 F.3d 905, 909 (Fed. Cir. 2008).

A

Dr. Conklin argues that the Board misinterpreted 38 U.S.C. § 7403 in ruling that the VEOA process at issue is not available to VHA appointments of physicians. The Board held that this conclusion was compelled by our decision in *Scarnati*. *See Final Decision*, at *1–2; *Initial Decision*, at 7–8. We agree with the Board.

In *Scarnati*, decided not long after the enactment of the VEOA, we analyzed the VEOA's interaction with 38 U.S.C. §§ 7401 and 7403, which apply to VHA. *See* 344 F.3d at 1247–49. Section 7401 says that VHA may appoint a variety of specifically identified health-care-related professionals, and it places them in four categories. As relevant here, paragraph (1) lists precisely eight profession occupations, including "[p]hysicians," § 7401(1), while paragraph (3) lists several dozen, such as "audiologists" and "dental assistants," and allows the Secretary of Veterans Affairs to add to the list, § 7401(3). Section 7403(a) says that "[a]ppointments under this chapter of health-care professionals *to whom this section applies* may be made . . . *without regard to civil-service requirements.*" § 7403(a)(1) (emphases added). Section 7403(a) then immediately adds that "[t]his section applies to the following persons appointed under this chapter [§ 7401 *et seq.*]: (A) Physicians. . . ." (with the remaining (B)–(H) items on the list matching the other occupations recited in § 7401(1)). § 7403(a)(2). Thus, VHA may appoint physicians (and the other personnel identified in §§ 7401(1) and 7403(a)(2)) "without regard to civil-service requirements." § 7403(a)(1).

This court in *Scarnati* interpreted the phrase "civil-service requirements" in § 7403(a) to reach all "provisions of Title 5," including the VEOA provisions codified at 5 U.S.C. § 3330a. 344 F.3d at 1248. We relied in part on 38 U.S.C. § 7425(b), which states (with exceptions not relevant in *Scarnati* or here) that "no provision of title 5 or any other law pertaining to the civil service system which is inconsistent with any provision of . . . [chapter 74 of title 38] shall be considered to supersede, override, or otherwise modify such provision." *See Scarnati*, 344 F.3d at 1248. We concluded that, in § 7403, "Congress has specifically exempted [§ 7401(1)-covered] appointments from the VEOA process" such that "[a]n appeal to the Board under 5 U.S.C. § 3330a(d)(1) for an alleged violation of veterans'

preference rights is not available to those applying for § 7401(1) positions." *Scarnati*, 344 F.3d at 1248–49.

Dr. Conklin's argument here runs headlong into that binding precedent. Dr. Conklin does not dispute that the Chief of Staff job was a "physician" position within the meaning of §§ 7401(1) and 7403(a)(2). *See* Conklin Informal Br. at 6–8. Dr. Conklin says, rather, that "veterans' preference is not a civil service requirement" from which VHA physician appointments are exempt. *Id.* at 7 (emphasis removed). But in *Scarnati* we held precisely the opposite, as just recounted. *See* 344 F.3d at 1248. That precedent directly applies to the situation here.

B

Dr. Conklin nevertheless argues that 38 U.S.C. § 7403(f), which was not expressly addressed by *Scarnati*, mandates that the agency apply the veterans' preference provisions of Title 5 when hiring physicians. *See* Conklin Informal Br. at 8–11. Subsection (f) was a part of section 7403 when we decided *Scarnati*, and it had materially the same form as today, so there has been no intervening change of law. *See* Veterans' Medical Programs Amendments of 1992, Pub. L. No. 102-405, 106 Stat. 1972, 1984. But we need not decide whether we could properly depart from *Scarnati* here, solely because an argument has been made that was not discussed in *Scarnati*, if Dr. Conklin were right about the meaning of § 7403(f). We conclude that he is wrong about § 7403(f).

Section 7403(f) states in relevant part:

(1) Upon the recommendation of the Under Secretary for Health, the Secretary may—

(A) use the authority in [§ 7403(a)] to establish the qualifications for and (subject to paragraph (2)) *to appoint individuals to positions listed in section 7401(3) of this title*[.]

. . .

(2) *In using such authority to appoint individuals to such positions*, the Secretary shall apply the principles of preference for the hiring of veterans and other persons established in subchapter I of chapter 33 of title 5.

(3) Notwithstanding any other provision of this title or other law, . . . the applicability of the principles of preference referred to in paragraph (2) . . . involving individuals appointed to such positions, . . . shall be resolved under the provisions of title 5 as though such individuals had been appointed under that title.

38 U.S.C. § 7403(f) (emphases added).

Dr. Conklin's first argument about § 7403(f) is, essentially, that because § 7403(a)(2) says that "this section" (*i.e.*, all of § 7403) applies to "[p]hysicians," and § 7403(f) (which is part of § 7403) requires the Secretary to apply the "principles" of veterans' preference, the Secretary therefore must prefer veterans when hiring physicians into VHA. Conklin Informal Br. at 8–9. But § 7403(f)(1), by its plain language, states an authority to make appointments to positions "listed in section 7401(3)" only, § 7403(f)(1); and § 7403(f)(2)'s statement about the principles of veterans' preference is expressly limited to the just stated authority—to "using *such* authority to appoint individuals to *such* positions," § 7403(f)(2) (emphases added). Physicians are listed in § 7401(1), not § 7401(3), so § 7403(f)'s reference to veterans' preference does not impose veterans' preference requirements on VHA's appointments of physicians. Thus, § 7403(f) confirms that the statute draws an intentional distinction between physician positions and the non-physician positions of § 7401(3) with respect to veterans' preference, just as we held in *Scarnati*.

Dr. Conklin also argues that a contrary interpretation of § 7403(f) would run afoul of the Fifth Amendment's Equal Protection Clause. Conklin Informal Br. at 13–16. That argument is similarly unavailing.

The category of physicians is not a suspect or quasi-suspect classification, so laws that treat physicians differently from others need only "rationally further a legitimate state interest" to comply with the constitutional guarantee of equal protection. *See Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). That standard is met if there is "any reasonably conceivable state of facts that could provide a rational basis for the classification," so it is a challenger's burden to "negative every conceivable basis which might support" the classification. *Armour v. City of Indianapolis*, 566 U.S. 673, 681 (2012) (citations omitted). Dr. Conklin comes nowhere near showing that Congress lacked a rational basis for permitting VHA to treat physicians differently from certain other individuals when making appointments. It is certainly conceivable, for example, that Congress rationally believed that exempting VHA physician appointments from civil-service requirements would further a legitimate interest in keeping VHA fully staffed—a prospect that Dr. Conklin does not rebut. And there is not the slightest basis for thinking that Congress was motivated by a "bare desire to harm" physicians, a concept mentioned in *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 446–47 (1985) (cleaned up) (citation omitted). Thus, Dr. Conklin's § 7403(f)-based arguments do not justify reaching a result here different from the result we reached in *Scarnati*.

## III

We have considered Dr. Conklin's remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm the decision of the Board.

The parties shall bear their own costs.

**AFFIRMED**